**Vincent CUSANO, Etc., Plaintiff,**

**v.**

**Gene KLEIN, et al., Defendants.**

**No. 97CV4914 AHM(Ex).**

United States District Court, C.D. California.

March 20, 2002.

---

James J. Little, Stephen P. Collette, Little & Collette, Los Angeles, CA, for Vincent Cusano.

John H. Lavely, Jr., Brian G. Wolf, Paul K. Lukacs, Lavely & Singer, Los Angeles, CA, for Gene Klein, Paul Stanley, Kiss Company, Gene Simmons Worldwide, Inc., Simstan Music Ltd., Kisstory Ltd., Polygram Records, Inc., Kiss Catalog Ltd.

Brian G. Wolf, Paul K. Lukacs, Lavely & Singer, Los Angeles, CA, for Stanley Eisen.

Barry E. Mallen, Manatt Phelps & Phillips, Los Angeles, CA, for Horipro Entertainment Group.

Mary A. Parker, Parker Allen & Crofford, Nashville, TN, for Metaluna Records LLC.

Metaluna Records LLC, Nashville, TN, pro se.

## ORDER RE DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION AND TO DISMISS

MATZ, District Judge.

### I.

### INTRODUCTION

This action is before the Court on Defendants' motion for summary adjudication and to dismiss Plaintiff's claims for unpaid royalties on the 1982 KISS album entitled "Creatures of the Night." For the reasons stated herein, the Court DENIES Defendants' motion for summary adjudication and GRANTS Defendants' motion to dismiss without prejudice. This matter is subject to ruling without need for a hearing, pursuant to Local Rule 7–15.

### II.

### FACTS

#### A. Cusano Co–Authors the "Creature Compositions"

Unless otherwise noted, the following facts are undisputed. Plaintiff Vincent Cusano was a lead guitarist in the band KISS from an unspecified date in 1982 until April 13, 1984. Complaint ¶ 21.[1] He was employed by Defendant the KISS Company from 1982 until 1994. Plaintiff's Statement of Genuine Issues ("SGI") ¶ 1. While Cusano was employed by the KISS

1. The Complaint in this action, which was filed on July 7, 1997, is attached as Defendant's Exhibit H.

Company, he co-wrote the musical compositions (among others) "I Love it Loud," "I Still Love You" and "Killer," all of which appeared on the album "Creatures of the Night." SGI ¶ 2. The parties refer to these compositions as the "Creatures Compositions."

## B. Cusano and KISS Agree to Split the Royalties from the Creatures Compositions 50/50

On September 1, 1982,[2] "Vincent Cusano d/b/a Street Beat Music"[3] entered into a contract ("Creatures Agreement") with the KISS Partnership stating that each "shall jointly own an undivided fifty (50%) percent interest in the Compositions, including all of the worldwide right, title and interest, including the copyrights, the right to copyright and the renewal rights .... " SGI ¶ 4. Pursuant to the Creatures Agreement, the KISS Partnership would exploit and administer the copyrights to the Creatures Compositions throughout the world. SGI ¶ 5. Cusano was to receive fifty percent of Net Income, as defined by the Creatures Agreement, received by or credited to the KISS Partnership from the

exploitation of the Creatures Compositions. SGI ¶ 6 (citing Ex. A–31). The KISS Partnership and Cusano (d/b/a Street Beat Music) would split both the publisher's share and the writer's share of public performance royalties 50/50. SGI ¶¶ 7, 9.[4] Cusano's half of both such royalties was to be paid to him directly by his performing rights society, Broadcast Music Inc. ("BMI"). SGI ¶¶ 8, 11.[5]

The Creatures Agreement required that the KISS Partnership provide accountings to Cusano on a semi-annual basis. SGI ¶ 16. However, in 1982 and 1983, Cusano entered into two employment agreements (collectively, "Employment Agreement") with the KISS Company (successor-in-interest to the KISS Partnership) that amended the Creatures Agreement such that the KISS Company was required to account to Cusano on a quarterly basis. SGI ¶¶ 13, 18, 19.

## C. Polygram Allegedly Is Required to Make Royalty Payments to Cusano

Cusano alleges that during the relevant time period, Defendant Polygram had a

2. Both parties mistakenly represent that the Creatures Agreement was signed on September 1, 1992. Defendant's Statement of Undisputed Facts ("DSUF") ¶ 3 and SGI ¶ 3. However, this Agreement, which is attached as Defendant's Exhibit A, clearly indicates that it was signed on September 1, 1982. Def.'s Ex. A–29.

3. Cusano refers to Street Beat Music as his "publishing company," but it is really just a California fictitious business name Cusano filed with the Los Angeles County Recorder's Office on November 14, 1985. SGI ¶ 25. The name expired in 1990. SGI ¶ 26. Street Beat Music was never a corporation, partnership or limited liability corporation. SGI ¶¶ 28–30. Street Beat Music was never a distinct legal entity from Cusano, and Cusano agrees that there is no legal distinction between Vincent Cusano the individual and "Vincent Cusano d/b/a Street Beat Music." SGI ¶¶ 20, 31.

4. Unless different contractual arrangements are made, public performance royalties are split 50/50, with the performing rights society (*see infra* note 5) paying 50% of the royalties directly to the writer (the so-called "writer's share") and the other 50% of the royalties directly to the music publisher (the so-called "publisher's share"). SGI ¶ 45.

5. A performing rights society collects license fees from broadcasters and others when a song in its repertoire is publicly performed, e.g., played on the radio or on television. SGI ¶ 42. Using the funds collected as license fees, the performing rights society then pays royalties to the publisher(s) and writer(s) of the songs which are publicly performed. SGI ¶ 43. In the United States, the two principal performing rights societies are ASCAP (American Society of Composers, Authors and Publishers) and BMI. SGI ¶ 44.

recording contract with KISS. Complaint ¶ 23. Cusano alleges that "KISS delegated some, or all, of its responsibilities to open and administer this open book royalty account [i.e. for the royalties from the Creatures Compositions] to Polygram, which also maintains a currently [sic] open book royalty account for the benefit of Streetbeat and Cusano." Complaint ¶ 40.[6] Polygram allegedly was required to make royalty payments directly to Cusano. Complaint ¶ 63.

### D. Street Beat Music and Horipro Enter an Agreement of Sale Relating to the Creature Compositions

On March 18, 1992, Street Beat Music and Horipro Entertainment Group, Inc. ("Horipro") entered into an Agreement of Sale relating to the Creature Compositions ("Horipro Agreement"). SGI ¶ 32.[7] The first recital states that "Buyer [Horipro] wishes to purchase from Seller [Street Beat Music] ... all of Seller's right, title and interest of whatsoever nature" in the Creature Compositions. SGI ¶ 33. The Grant of Rights reads: "Seller hereby irrevocably and absolutely bargains, sells, assigns, transfers and grants to Buyer ... one hundred (100%) of Seller's right, title and interest of whatsoever nature" in the Creature Compositions. SGI ¶ 34. The Compensation paragraph states that Seller would receive $40,000 in consideration for "all of seller's right, title and interest" in and to the Creature Compositions. SGI ¶ 36. The Seller represented and warranted that the interest being conveyed in the Creatures Compositions included "any interest of whatsoever nature in publishing and/or administration in connection with any and all copyrights relating thereto." SGI ¶ 37. The Horipro Agreement stated that the Seller transferred "all rights and interests existing under all agreements and licenses related to the composition." SGI ¶ 38. The Agreement stated that Horipro would not receive "Songwriter's [Cusano's] share of performance income, which shall be paid directly to Songwriter [Cusano]." SGI ¶ 39; Def.'s Ex. D–96, ¶ A.

### E. The Horipro Agreement Breaks Down

On July 7, 1997, Cusano filed suit against several defendants, including KISS, Polygram and Horipro. Plaintiff's complaint alleged that under the Horipro Agreement, Cusano only transferred to Horipro his publisher's share of the royalties, not his writer's share of the royalties from the Creature Compositions. Complaint ¶ 42. Horipro allegedly took the position that Street Beat materially breached the Horipro Agreement, while Cusano alleged that Horipro repudiated the Agreement, and it was therefore void. Complaint ¶ 44. Cusano alleged that there had never been an effective transfer to Horipro by either Streat Beat or Cusano of any rights in the Creatures Compositions. *Id.* Horipro allegedly "wrongfully directed Polygram to pay mechanical royalties properly belonging to Street Beat and Cusano to Horipro." Complaint ¶ 45.

---

6. By way of background, Cusano's complaint alleges: "In order to monitor sales of the copyrighted musical compositions, collect royalties and calculate royalties payable to the owners of the various copyright interests, it is customary in the recorded music industry to establish a royalty account which is generally administered by the subject record company. This royalty account is maintained as an open book account within the meaning of California Code of Civil Procedure § 337a and new entries are made on an ongoing basis to reflect records sold, entitlement to royalties and royalties paid." Complaint ¶ 62.

7. The Horipro Agreement is attached as Defendant's Exhibit D.

Polygram allegedly complied with Horipro's directions. Complaint ¶ 46.

### F. Cusano Files Suit and Judge Davies Grants Horipro's Motion to Transfer Cusano's Claims Against It to New York

When this case was filed and for the ensuing year, Judge Davies presided over the case. He described Cusano's claims against Horipro as follows:

> The complaint states a cause of action against Horipro for fraud and deceit, conversion and constructive trust. The claims are based on the allegations that Horipro either never gained any rights to the writers share of royalties under the March 18, 1992 agreement or Horipro repudiated the agreement and all rights reverted to Plaintiff.

Def.'s Ex. H–220.

Horipro moved to transfer Cusano's claims against it to New York because the Horipro Agreement contained a forum selection clause stating that "New York courts, only, will have jurisdiction of any controversies regarding this Agreement; and, any action or other proceeding which involves such a controversy will be brought in the courts located within the State of New York, and not elsewhere." Def.'s Ex. H–219–20; SGI ¶ 40. Judge Davies granted Horipro's motion to transfer because "[i]nterpretation of the March 18, 1992 agreement and a decision as to whether the agreement has been repudiated by Horipro is necessary in order to determine the validity of the claims against Horipro." Def.'s Ex. H–220. Judge Davies also found that "[t]he claims against Horipro are separate and distinct from the claims against the remaining Defendants." Def.'s Ex. H–221. Accordingly, on December 3, 1997, Judge Davies transferred all of Cusano's claims against Horipro to the U.S. District Court for the Southern District of New York. SGI ¶ 46.

Cusano did not appeal Judge Davies's transfer order. SGI ¶ 48. On January 4, 2002, this Court ordered Cusano to file a report detailing the status of his claims against Horipro. On January 14, 2002, Cusano filed the report, which stated: "Following transfer, Plaintiff's former counsel to[ok] no action with respect to Plaintiff's claims against Horipro. Plaintiff intends to pursue his claim for songwriter's royalties on the 'Creatures of the Night' album from Polygram Records. Mr. Cusano is the source of this information. The Clerk of the Southern District of New York ... confirms that there is no record of this case following transfer." Def.'s Ex. N–288. Defendant asserts in its Statement of Undisputed Facts ("DSUF") that "Cusano has affirmatively abandoned the notion of adjudicating this dispute with Horipro in New York." DSUF ¶ 52. Cusano disputes this fact, stating: "Due to financial constraints, Plaintiffs currently are unable to pursue their claims against Horipro in New York. Plaintiffs have made no such future determination pertaining to the potential for future activity should Plaintiffs' financial circumstances improve." SGI ¶ 52.

### G. Defendants' Motion for Summary Adjudication and to Dismiss

Defendants now move for summary adjudication of Cusano's claims relating to royalties on the Creatures Compositions.[8]

---

**8.** As Cusano indicated in a Joint Status Report filed December 28, 2001, there are seven remaining claims regarding the Creatures Compositions royalties: open book account (Claim 1), breach of fiduciary duty (Claim 2), fraud (Claim 3), constructive fraud (Claim 4), negligent misrepresentation (Claim 5), conversion (Claim 9) and imposition of constructive trust (Claim 10). Of these claims, Horipro was named as a defendant only in Claims 9 and 10.

The bases for their motion are: (1) Plaintiff will have the burden at trial of proving that he owns some interest in the Creatures Compositions, and he cannot point to any evidence raising a genuine issue that he owns any interest in them; (2) one reason why Plaintiff cannot raise a genuine issue with respect to ownership of the Creatures Compositions is that the Court may not adjudicate the ownership of the Creature's Compositions in Horipro's absence because to do so would violate Horipro's due process rights; and (3) even if the Court decides to adjudicate copyright ownership, the Horipro Agreement establishes that Horipro has all right, title and interest to the Creatures Compositions.

In the alternative, Defendants argue that Cusano's claim for royalties against Defendants should be dismissed with prejudice because Cusano has failed to pursue his rights against Horipro for over four years.[9] At the very least, Defendants argue, Cusano's claim for royalties against Defendants should be stayed until after the District Court in New York decides whether Cusano transferred his rights to Horipro.

The Court holds that it would be inappropriate to adjudicate copyright ownership as between Cusano and Horipro because to do so would potentially prejudice Horipro's rights and could subject Polygram to conflicting obligations. Moreover, to adjudicate ownership in this forum would be inconsistent with Judge Davies' order transferring Cusano's claims against Horipro to New York. The Court declines to grant summary adjudication to Defendants on these grounds. Instead, the Court GRANTS Defendants' motion to dismiss Cusano's claims against Defendants

without prejudice to his re-filing the claims after he has pursued his rights against Horipro. Alternatively, Cusano may attempt to implead Polygram (or any other Defendant) as a defendant in the New York action against Horipro.

### III.

### DISCUSSION

#### A. Standards Governing Summary Judgment

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on

---

**9.** Throughout their brief, Defendants conflate their request for the Court to grant summary adjudication to them and their request that the Court "summarily dismiss" Cusano's claims against them. The Court construes Defendants' brief to request summary adjudication on Cusano's claims and, in the alternative, to dismiss Cusano's claims (or, at least, stay them).

each issue material to its case." *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir.2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.' " *Cleveland v. Policy Management Sys. Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999) (*citing Celotex,* 477 U.S. at 322, 106 S.Ct. 2548).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.; Beyene v. Coleman Sec. Serv., Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.' " *Hunt v. Cromartie,* 526 U.S. 541, 119 S.Ct. 1545, 1551–52, 143 L.Ed.2d 731 (1999) (*citing Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence."

*Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

**B. Who has the Burden of Proof as to Cusano's Ownership in the Creatures Compositions?**

The burdens of the parties on a summary judgment motion depends on who will have the burden of proof at trial. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. If Cusano will bear the burden of proving at trial that he has some ownership interest in the Creatures Compositions, then Defendants may prevail on their summary adjudication motion by pointing to an absence of evidence from Cusano. In contrast, if Defendants will bear the burden at trial of proving that Cusano has no ownership interest in the Creatures Compositions, they may only prevail on their summary judgment motion by coming forward with evidence that would entitle them to a directed verdict at trial.

Defendants argue that Cusano will bear the burden of proving that he has some ownership interest in the Creatures Composition because unless he does so, he cannot establish that he has "standing" to pursue his claim for royalties. Cusano argues that Defendants are raising Cusano's lack of ownership interest as an affirmative defense, and therefore they will have the burden of proving that he does not have an ownership interest in the Creatures Compositions.

The Court agrees with Defendants that Cusano will bear the burden of proving, as a threshold matter, that he has some ownership interest in the Creatures Compositions in order to prevail on his claims for

royalties against the Defendants. The Court does not believe that the appropriate analysis is whether (as Defendants put it) Cusano has "standing" to pursue his claims against Defendants. *See G & G Fire Sprinklers Inc. v. Bradshaw*, 156 F.3d 893, 899 n. 2 (9th Cir.1998) (Article III standing analysis is distinct from the question whether a party has a property interest). Indeed, it seems clear that Cusano does have standing to pursue his claims against Defendants because (1) he alleges that he is not being paid royalties he claims he is owed (injury-in-fact); (2) Polygram, a defendant in this suit, is allegedly paying Horipro the royalties to which Cusano claims he is entitled (causation); and (3) it is likely and not merely speculative that if the Court rules that Cusano is entitled to the royalties, he will obtain the relief that he seeks (redressability). *Id.* at 899–900.

Although Cusano has standing to pursue his claims, he will still be required to prove as part of his case against Defendants that he does, in fact, own the property interest that he claims Defendants owe him. This case is analogous to a copyright infringement suit, where a plaintiff may prevail only if she demonstrates that she owns a valid copyright. *Walker v. University Books, Inc.*, 602 F.2d 859, 862 (9th Cir. 1979) ("[I]n order for a plaintiff to prevail on an action for infringement, two elements must be established: Ownership of a valid copyright and copying of the protected work by the defendant.") (citing 17 U.S.C. § 101). If a plaintiff fails to demonstrate that she owns a valid copyright, she may not pursue her claim for copyright infringement. *Id.* (holding that plaintiff could not pursue her copyright infringement claim against defendant because she had assigned her copyright to another before the alleged infringement occurred). Similarly, if Cusano fails to demonstrate that he has some ownership interest in the Creatures Compositions, he

may not pursue his claims for royalties against Defendants. Therefore, Defendants may prevail by pointing to an absence of evidence raising a genuine issue that Cusano has some ownership interest in the Creatures Compositions. The burden then shifts to Cusano to point to some evidence raising a genuine issue that he does have an ownership interest.

### C. Cusano's Claims for Royalties on the Creatures Compositions Should Be Dismissed

■ Whether Cusano has an ownership interest in the Creatures Compositions depends on the validity and meaning of the Horipro Agreement. Cusano's complaint alleges that Horipro repudiated the Agreement, and therefore that Cusano never validly transferred his rights to Horipro, and he retained a 50% ownership interest in the Creatures Compositions. In his Opposition Brief, Cusano does not pursue the repudiation theory alleged in his complaint. Instead, he argues that he transferred to Horipro only his publisher's share of the Creatures Compositions, not his songwriter's share—meaning that he retained a 25% ownership interest in the Creatures Compositions. The Court is unsure whether Cusano intends to abandon his repudiation theory against Horipro, but, in any event, he has not raised a genuine issue on this motion that Horipro repudiated the Agreement. If Cusano is to prevail at all, it is only because he can raise a genuine issue that he retained a 25% songwriter's ownership interest in the Creatures Compositions.

This question—whether Cusano retained a 25% songwriter's ownership interest— requires the Court to interpret the Horipro Agreement. Defendants argue that the Court may not interpret the Horipro Agreement because to do so would violate Horipro's due process rights, given that

Horipro is no longer a party to this action. Defendants argue that the Court may not "render a judgment" against a non-party without violating that party's due process rights. Defendants further argue that they have standing to make this argument because "an adjudication by this Court of Horipro's property rights in the Creatures Compositions would directly affect the monetary obligations of KISS and Polygram." Opposition at 16 n. 19.

As a preliminary matter, it is clear that absent an exception to the rule that the Court does not have jurisdiction to "render a judgment" against a non-party such as Horipro, Horipro would not be bound by any judgment of this Court. *Martin v. Wilks*, 490 U.S. 755, 762, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (citing the " 'principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.' ") (quoting *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). Therefore, as a technical matter, Defendants are not correct in arguing that this Court would bind Horipro if it chose to interpret the Horipro Agreement.

However, as a practical matter, it is also clear that if the Court ruled that Cusano did retain a 25% songwriter's interest in the Creatures Compositions, Horipro's ability to protect its interest in later litigation could be prejudiced, because under principles akin to judicial comity, a district court in New York might, at the very least, be influenced (if not bound) by this Court's rulings. *See Southeast Resource Recovery Facility v. Montenay Int'l Corp.*, 973 F.2d 711, 714 (9th Cir.1992) (discussing full faith and credit, comity and conservation of judicial resources). On the other hand, if this Court were to rule that Cusano retained a 25% interest and the court in New York did not agree but instead ruled that Cusano retained *no* interest in the songs, Polygram would find itself facing inconsistent obligations; would it be required to pay the royalties to Horipro or to Cusano?

Given these due process and practical concerns, the Court concludes that it may not adjudicate Cusano's rights vis a vis Horipro: there is a risk of prejudice to Horipro, and a concomitant risk that Polygram will be subject to inconsistent obligations. Moreover, in a prior order Judge Davies held that Cusano must pursue his rights vis-a-vis Horipro in New York. To adjudicate those claimed rights in this forum would be inconsistent with the law of the case and would invite an end-run around Judge Davies's order.

While this procedural morass does not entitle Polygram or any other Defendant to summary adjudication on Cusano's claims for royalties on the Creatures Compositions, Cusano should not be permitted to wield these claims over Defendants in this forum, having failed to prosecute them in New York. The most equitable outcome is, therefore, for Cusano's claims for royalties on the Creatures Compositions against Defendants to be dismissed without prejudice.

If within thirty days from the date of this Order Cusano establishes in this Court that he has taken whatever steps may remain available to him in the New York action to establish his rights vis-a-vis Horipro, he may thereby preserve a basis at least to seek leave to re-file his claims against Defendants in this Court. If Cusano fails to file proof of such action, the dismissal of his claims shall be with prejudice. If he does file such proof, then by not later than ninety days from the date of this Order, Cusano may move to re-file his claims against Defendants. Whether he will be granted that leave may well depend primarily upon the status of the New York

action at that time. If leave to re-file is granted, any such claims would be stayed pending the outcome of the Horipro action. If Cusano fails to file a report within thirty days, or if after ninety days he fails to establish that the New York action is being prosecuted meaningfully and in good faith, the dismissal of these claims shall be with prejudice.

## IV.

### CONCLUSION

Defendants' motion for summary adjudication is DENIED. However, their motion to dismiss Cusano's claims for royalties on the Creatures Compositions[10] is GRANTED. The dismissal is without prejudice subject to the conditions specified above.

IT IS SO ORDERED.

---

10. Defendants combined these motions, which have been given docket number 300.