Vincent **CUSANO, p/k/a Vinnie Vincent, individually and d/b/a Streetbeat Music, and d/b/a Vinnie Vincent Music, Plaintiff,**

v.

**HORIPRO ENTERTAINMENT GROUP, Defendant.**

**No. 02 Civ. 3002(VM).**

United States District Court, S.D. New York.

Jan. 28, 2004.

Ira Allan Ginsburg, Morris Plains, NJ, for Plaintiff.

Orin S. Snyder, Parcher, Hayes & Snyder, New York City, John H. Lavely, Lavely & Singer, Los Angeles, CA, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Vincent Cusano ("Cusano") is a musician and songwriter who performed as a member of the musical group "KISS" in the early 1980s. In 1992 Cusano sold to Horipro Entertainment Group ("Horipro") certain rights to three songs that he and other members of KISS had co-written. A dispute eventually arose over the scope of the rights that Horipro acquired. Cusano filed this action against Horipro for fraud and deceit, conversion, and constructive trust. Horipro now moves for summary judgment on all of Cusano's claims. For the reasons set forth below, the Court grants Horipro's motion and dismisses Cusano's complaint.

### I. FACTS AND PROCEEDINGS

Cusano is a musician and songwriter who performed under the professional name "Vinnie Vincent" as a guitarist with the musical group "KISS" between 1982 and 1984. In 1982, Cusano co-wrote three songs with other members of KISS entitled "Killer," "I Love It Loud," and "I Still Love You" (collectively, the "Creatures Compositions" or the "Songs"). KISS recorded the Songs and released them in 1982 on an album titled "Creatures of the Night."

Later that year, Cusano, doing business as Street Beat Music ("Street Beat"), entered into a co-publishing agreement dated September 1, 1982 (the "Creatures Agreement") with KISS, a partnership. In the Creatures Agreement, KISS and "Cusano d/b/a Street Beat" agreed that they would "jointly own an undivided fifty (50%) percent interest in the [Creatures] Compositions, including all of the worldwide right, title and interest, including the copyrights, the right to copyright and the renewal rights, therein and thereto." (Creatures Agreement, attached as Exh. C to Declaration of Barry E. Mallen executed June 27, 2003 ("Mallen Dec.").) The Creatures Agreement also stated that Cusano would receive fifty percent of the songwriter's share for each of the Creatures Compositions, and that Cusano d/b/a Street Beat would receive fifty percent of the publisher's share of public performance fees.[1]

---

1. Musical compositions generate several different streams of income. Music that is distributed on sound recordings such as compact discs generates mechanical royalties. Music that is publicly performed, such as when a

Disagreements arose between Cusano and KISS which ultimately led to Cusano leaving the band. KISS, Cusano, and Cusano d/b/a Street Beat signed an agreement in July 1984 that, *inter alia,* instructed PolyGram Records, Inc. ("Polygram"), a recording company that publishes certain songs by KISS, including the Creatures Compositions, to pay to Street Beat fifty percent of the "publisher share ... inclusive of writer share" for mechanical royalties for each of the Creatures Compositions. (Agreement dated July 18, 1984 between The KISS Company, Cusano, and Cusano d/b/a Street Beat (the "Settlement Agreement"), at Exh. 2, attached as Exh. E to Mallen Dec. at E–17.) The Settlement Agreement provided that Polygram would not pay mechanical royalties in any form directly to Cusano for any of the Creatures Compositions.

In 1992, Street Beat and Horipro Entertainment Group, Inc. ("Horipro"), a music publisher, entered into an Agreement of Sale dated March 18, 1992 (the "Agreement of Sale") in which Horipro paid the seller, identified only as Street Beat, $40,000 in exchange for certain rights to the Creatures Compositions. The scope of the rights conveyed in the Agreement of Sale is the subject of this action.

Early in 1994, Horipro became concerned that Cusano might have previously conveyed to a third party some of the rights that Horipro acquired in the Agreement of Sale. Horipro's counsel consequently wrote a letter dated February 3, 1994 to Broadcast Music, Inc. ("BMI"), Cusano's and Street Beat's performing rights society,[2] requesting that BMI pay to Horipro any amounts otherwise payable to Cusano or Street Beat (the "BMI Letter"). The BMI Letter stated in part that "Streetbeat/Vincent had previously conveyed the same rights to The KISS Company, thus obviating the agreement with [Horipro] and, in the process, breaching every material representation and warranty contained in the agreement." (BMI Letter, attached as Exh. B–1 to Mallen Decl.)

In 1997, Cusano filed a fourteen-count complaint in the United States District Court for the Central District of California against the other members of KISS, PolyGram, Horipro, and other defendants. As part of that complaint, Cusano alleged that Horipro had repudiated the Agreement of Sale and alternatively that the Agreement of Sale did not give Horipro certain rights that Horipro claimed to have acquired. Cusano asserted claims against Horipro for fraud and deceit, conversion, and constructive trust. The district court severed Cusano's three claims against Horipro and transferred those claims to this Court because of a forum selection provision in the Agreement of Sale. *See Cusano v. Klein,* No. 97–4914 (C.D.Cal. Dec. 3, 1997), attached as Exh. G to Mallen Decl.

Horipro now moves for summary judgment.

song is played on a radio, used in a movie or commercial, or sampled in another song, produces performance royalties. Each of these two royalty streams is then divided between the songwriter (the writer's share) and the composition's publisher (the publisher's share). The publisher is typically the party responsible for promoting the composition, registering copyrights for the composition, and exploiting the composition, such as by licensing the composition to third parties so that the composition may be publicly performed. *See Jasper v. Bovina Music, Inc.,* 314 F.3d 42, 45 n. 1 (2d Cir.2002); 6 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 30.02(A) (2001).

2. A performing rights society such as BMI or ASCAP collects royalties from the public performance of a musical composition and distributes those royalties to the writer and the publisher of the composition. *See* Nimmer, *supra* n. 1, at § 30.02[A].

## II. DISCUSSION

### A. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sabatino v. Flik Int'l Corp.,* 286 F.Supp.2d 327 (S.D.N.Y.2003). A genuine issue of material fact is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a court is deciding a motion for summary judgment, "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Gallo v. Prudential Residential Services, Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994).

### B. REPUDIATION

In his complaint commencing this action, Cusano raised two alternative theories in support of his causes of action against Horipro for fraud and deceit, conversion, and constructive trust. His first allegation was that Horipro repudiated the Agreement of Sale in the BMI Letter, and that all rights to the Creatures Compositions consequently reverted to Cusano. But in his brief to the Court opposing Horipro's summary judgment motion, Cusano makes no mention of this repudiation theory. There is no mention of the BMI Letter and no assertion that Horipro repudiated the Agreement of Sale. Cusano's brief to the Court instead argues that this action should survive summary judgment if Street Beat is a separate legal entity from Vincent Cusano, and that the material disputed facts preventing summary judgment revolve around an interpretation of the Agreement of Sale. Consequently, the Court concludes that Cusano has abandoned his "repudiation" theory. Moreover, the Court notes that Cusano has offered no evidence, and the Court has found nothing else in the record, supporting a conclusion that Horipro repudiated the Agreement of Sale. Rather than signaling a repudiation of the Agreement of Sale, the BMI Letter signifies a clear intent by Horipro to enforce the Agreement of Sale.

### C. THE AGREEMENT OF SALE

Cusano's claims for fraud and deceit, conversion, and constructive trust turn on an interpretation of the Agreement of Sale. Cusano argues that Horipro acquired only the publisher's share of royalties to the Creatures Compositions, while Horipro asserts that it purchased all of Cusano's and Street Beat's rights to the Songs except for Cusano's songwriter's share of public performance royalties.

Cusano asserts that the Agreement of Sale is ambiguous in explaining what rights Horipro acquired. He argues that this ambiguity renders the Agreement of Sale "void because the parties never truly documented what they were to sell or buy," and therefore Horipro has engaged in fraud and deceit by demanding to be paid Cusano's writer's share of royalties under the Agreement of Sale. (Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opposition"), dated Sept. 23, 2003, at 8.) Cusano alleges that Horipro has engaged in conversion by claiming possession of his writer's share of the royalties for the Songs because, Cusano claims, the Agreement of Sale does not give Horipro those royalties. Finally, Cusano argues that the Court should establish a constructive trust over the writer's share of royalties to the Creatures Compositions because Horipro does

not have the right to those royalties under the Agreement of Sale.

Any plausibility these claims may have centers on Cusano's interpretation of the Agreement of Sale. That contract was entered into by Street Beat as the seller and Horipro as the buyer. Cusano is identified only as the Songwriter. The Agreement of Sale states that the "Buyer wishes to purchase from Seller, and Seller wishes to sell to Buyer on the terms and conditions set forth below, all of Seller's right, title and interest of whatsoever nature in and to the [Creatures Compositions] written or co-written by Vincent J. Cusano (aka Vinnie Vincent) ("Songwriter")." (Agreement of Sale at 1, attached as Exh. A to Declaration of Howard Siegel executed July 17, 2003, at A–1.) The Agreement of Sale defined in relevant part the rights that the Seller was relinquishing as:

> [O]ne hundred (100%) percent of Seller's right, title and interest of whatsoever nature in and to the [Creatures Compositions], including the title, words and music thereof, it being understood and agreed that a one hundred (100%) percent undivided interest in the Compositions and the copyrights therein, covering the use or any manner or type of use of the Compositions, are and shall be the sole and exclusive property of Buyer.... Seller acknowledges that included within the rights and interests hereinabove referred to, but without limiting the generality of the foregoing, are the following rights to the extent that such have not been transferred from Seller to Buyer prior to the date hereof: (i) all worldwide copyrights in and to the Compositions, and renewals and extensions thereof, (ii) all rights and interests of every nature now or hereafter existing under and by virtue of any common law rights and any copyrights and renewals and extensions thereof in the Compositions, (iii) all rights and interests existing under all agreements and licenses relating to the Compositions and (iv) Seller's irrevocable grant to Buyer, and Buyer's successors, licensees, sub-licensees and assigns, of the sole and exclusive right, license and authority, throughout the world, as follows: (A) To manage and administer the Compositions, together with the right to receive all income derived from all sales, uses and/or exploitation of the Compositions, in any and all forms, including income heretofore uncollected, *other than Songwriter's share of performance income, which shall be paid directly to Songwriter.*

(Agreement of Sale at 1–2, emphasis added.)

Cusano argues that the "Seller" specified in the Agreement of Sale was Street Beat, not Cusano individually, and that Street Beat owned only the publisher's share of the Creatures Compositions. Cusano argues that Street Beat is an entity distinct from Cusano in his individual capacity, and consequently Horipro did not acquire any portion of the writer's share to the Creatures Compositions through the Agreement of Sale. He further asserts that "if the parties [to a contract] inartfully express their intent, it is up to the fact finder to divine the parties' intent if possible" and therefore summary judgment is not appropriate. (Opposition at 9.)

Cusano relies on *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's London,* in which the Second Circuit stated that "[i]f the language [in a contract] is susceptible to different reasonable interpretations, and 'where there is relevant extrinsic evidence of the parties' actual intent,' then the contract's meaning becomes an issue of fact precluding summary judgment." 136 F.3d 82, 86 (2d Cir.1998) (quoting *Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992)).

But if no ambiguities exist in the contract—in other words, if the language is clear and open to only one reasonable interpretation—summary judgment is proper. *See id.* Here, the Agreement of Sale provided that Horipro was purchasing a "one hundred (100%) percent undivided interest in the Compositions and the copyrights therein" except for the songwriter's share of performance income. (Agreement of Sale at 1–2.) There is no ambiguity in what Horipro acquired.

Cusano's argument that Street Beat was able to convey only the publisher's share of the Creatures Compositions is defeated by the contract's discussion of the songwriter's share of performance royalties. This clause would be wholly unnecessary if Street Beat merely possessed the publisher's share of royalties. The inclusion of the carve-out in the contract for the songwriter's share of performance royalties necessarily indicates that absent that clause, Street Beat would have conveyed those rights to Horipro. The absence of any similar reservation of the songwriter's share of mechanical royalties indicates that Street Beat possessed those rights and conveyed them to Horipro in the Agreement of Sale.

This conclusion is strengthened by a letter (the "Bienstock Letter"), written during the negotiations for the Agreement of Sale, from Cusano's counsel for the agreement, Ronald Bienstock ("Bienstock"), to Horipro's counsel for that contract, Howard Siegel. In the Bienstock Letter, dated April 9, 1992, Bienstock writes: "To confirm our conversation of today, conceptually the [Agreement of Sale] is a buy out of all rights and royalties specifically excluding [Cusano's] receipt of [Cusano's] writer's share of performance royalties[.]" (Bienstock Letter, attached as Exh. B to Siegel Dec.)

Cusano now argues that Bienstock mischaracterized the Agreement of Sale.

He maintains that he authorized Bienstock to negotiate the sale of only the publisher's share of the Creatures Compositions, and that he never authorized Bienstock to arrange for the sale of the writer's share of the Songs. But as Horipro argues, Cusano has provided no evidence at all to support this assertion. The Agreement of Sale is clear and unambiguous in its identification of the rights that Horipro acquired. When the terms of a contract are clear, "[t]he secret or subjective intent of the parties is irrelevant." *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir.1997). If Cusano truly intended a different result, he should have made certain that his attorney understood his intentions, and not have abided with the effects of the allegedly erroneous interpretation for many years and only then suddenly awaken to the contract ambiguity he now asserts.

Cusano argues that Street Beat is a separate legal entity from Cusano individually, and that Street Beat owned only (and thus conveyed only) the publisher's share of the Creatures Compositions to Horipro in the Agreement of Sale. A register of Los Angeles County Fictitious Business Names indicates that Cusano filed "Streetbeat Music" as a fictitious business name in 1985. But it is well settled that a fictitious business name does not establish a separate legal entity. *See Pinkerton's, Inc. v. Superior Court*, 49 Cal.App.4th 1342, 57 Cal.Rptr.2d 356, 360 (1996) (collecting cases). Instead, a fictitious business name is more properly characterized as an alias—it is solely a descriptive term. *See id.* Street Beat is not an incorporated entity, it is solely a fictitious name for Cusano and has no separate legal identity.

Moreover, in the litigation that Cusano brought in federal court in California, he acknowledged that "there is no legal distinction between Vincent Cusano the individual and 'Vincent Cusano d/b/a Street

Beat Music,'" and that court found that "Street Beat Music was never a corporation, partnership or limited liability corporation." *Cusano v. Klein,* 196 F.Supp.2d 1007, 1009 n. 3 (C.D.Cal.2002). Finally, the fictitious business name "Street Beat Music" expired in 1990 when Cusano failed to renew it. Cusano's argument that the 1992 Agreement of Sale involved Street Beat rather than Cusano individually is meritless.

Cusano's claims in the present action hinge on a determination that Horipro acquired only the publisher's share of royalties to the Creatures Compositions in the Agreement of Sale. But the Court has concluded that pursuant to that contract, Horipro acquired all the rights to the Creatures Compositions except for the writer's share of public performance royalties, which Cusano retained. Based on this ruling, Cusano cannot maintain his claims against Horipro for fraud and deceit, conversion, and constructive trust. Accordingly, the Court will grant summary judgment to Horipro and dismiss all of Cusano's claims.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendant Horipro Entertainment Group for summary judgment is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED**